Good morning, Your Honor. Tim Warner for Mr. Garcia, the appellant. The Morrison decision severely limits Congress' power under the commerce clause. The Morrison decision clearly states that it clearly makes a distinction between criminal offenses and non-criminal offenses. It states that Congress has no general police power to regulate traditional criminal violent crimes. It uses the term violent crimes. And specifically, the Morrison court stated that Congress may not regulate violent criminal conduct based solely upon the aggregate effect of that conduct on interstate commerce. So I really think the issue in this case is whether 844I is a regulation of violent criminal conduct. And if it is, I think Morrison applies, and it guides the court. So are you still making a facial challenge to the statute, or were you making an as-applied challenge? Your Honor, I do make a facial challenge to the statute. And my reasoning for the facial challenge is that the 844I statute refers to a burning of a building used in activities affecting interstate commerce. And my concern, I added that argument because my concern is that Morrison, that seems to run counter to Morrison having that language. Your argument is that statutes such as these were amended or enacted to specifically include the interstate nexus so as to avoid the problem that Morrison presented. What's your response to that? That is correct. That language was added. That is a so-called jurisdictional hook. And that language that used in an activity affecting interstate commerce is a signal that Congress was exercising its broad commerce cause power. In other words, the power to reach out and regulate even things that seem to be occurring locally or within the state, intrastate. That's what that language signals. That's interstate commerce, and that's the quintessential concern of Congress, right? The use of that language signals that. However, Morrison says that we cannot use the aggregate effects, in other words, Wickard v. Filburn, to regulate that. We can't reach out using the aggregate effects test. So tell me what in this statute you think points to the use of aggregate effects, or in this case. What in the statute? My argument is by using that term, used in any activity affecting, that use of that broad language is a trigger to aggregate effects test. The language, any activity you're saying? It could be a single activity. That wouldn't be aggregate. I mean, that's Wickard, right? The guy who was growing the wheat for his own use and not buying it through interstate commerce. Correct, correct. That's economic activity. I thought your argument was this is just pure violent crime. We're not talking about economic. We are not talking about economic activity. We're talking about the holding of Morrison, which is you can't aggregate the effect of violent crime such as aggregating the effect of arson. Okay, well, let me give you this hypothetical, and I have in mind the command under Salerno that says if we can find one legitimate application, then the facial challenge fails. Suppose that Mr. Garcia had placed an IED under an 18-wheeler at a truck stop off of an interstate highway. Would that be an appropriate application of 844I? I think, I guess there are two, really the jurisdictional hook has two elements. One is used in an activity affecting interstate. And in my hypothetical, clearly a long-haul truck that travels on interstates is used in interstate commerce. So the device is essentially doing, in essence, interfering with commerce. Right, right. So is that a legitimate application of the statute? Right, right. The jurisdictional hook says used in or used in an activity affecting. So in that case, would that be a vehicle that's being used in interstate? Can Congress constitutionally make that a Federal crime? I think the answer would be that the jurisdictional hook in this case, there's really two prongs to it. There's the used in and there's used in in activity affecting. So in your case, it would affect the one prong because that would be used in interstate commerce. But clearly that is a legitimate application. That is a legitimate application. Doesn't that then defeat the facial challenge? So what you're really arguing is an as-applied challenge because there's no proof that the SUV was Is that your best argument? I think that is the best argument. I do think, though, that because I think there is a facial challenge because it does affect the other prong. The used in prong, I agree with the court that that would be interstate commerce. Ours only refers to used in an activity. But how do you get around Russell then? Because Russell did look at effect on interstate commerce as opposed to used in. I understand. And Russell, I believe, is from 1985. It was a good year. I agree that Morrison makes me wonder about the future of Russell. But can we do anything about that unless the Supreme Court acts? I think that this court can. And I think only because the language used in Morrison, I think it is clear, I think it is unambiguous, and I think it makes it binding on this court in this circumstance. If there were ambiguity, then I think there would be a question. But I don't think it is ambiguous because of the language referring to violent criminal conduct and the specific language that it uses. So, Your Honors, I think that the Morrison decision in this case is the applicable authority that the court has to apply. But that doesn't help us. I mean, the problem we've got with Russell on the books is we've got an apartment complex that the manager testified was actively being used to rent units to people from out of state. Advertised on the Internet, et cetera. Clearly not a private residence, which I think would be a different situation. Clearly we have the Jones case that would cover a private residence. So it is a, I agree that there was a commercial use of this apartment complex. However, the problem is that is the problem I keep coming back to, as the Court knows, the language in Morrison and how we square that with Russell and with the facts of this case. But Russell specifically applied to an apartment complex, did it not? I think it was only two units, but it was an apartment building. It did. It did. So why isn't that directly on point as opposed to Morrison, which, as Judge Garbus points out, has some troubling language, but the inferior court judges don't have the authority to tell the Supreme Court their precedent is no good anymore. I understand. I understand that Russell, you know, obviously it's appealing because it does deal with an apartment complex, sure enough. But I think that the issue for this Court, again, is whether this is an ambiguous situation as to, gee, does Morrison apply or not, or is it not ambiguous? And I think that the clear language and the reference to violent criminal conduct and the instruction that Morrison gives makes it unambiguous and the appropriate authority for this Court to follow. I just wanted to say about the – some issues about the jurisdictional – what's called the jurisdictional hook. And I – in this case, the jurisdictional hook, the jurisdictional element that we've been talking about, it does not confine the application of this law to a discrete set of circumstances. And I think that the jurisdictional hook and the structure of this 844I, it in essence can lead to the federalization of any number of offenses, including a federal offense of petty theft from a Walmart, murder from any number of commercial establishments from a 7-Eleven, anything like that, could be the jurisdictional hook language and the structure of this 844I. And I think if you look at Morrison and Lopez, that has gone too far. And if we were to, in essence, immunize this by the use of that jurisdictional hook and to say that it's out of the realm of being challenged, we could render Lopez and Morrison meaningless. So I think that the jurisdictional element of this – But isn't that – I almost hate to ask this question, but isn't that the same argument that was raised and rejected with regard to the civil rights legislation in Katzenbach and Heart of Atlanta Motel? I mean, this is just an effect on commerce analysis. It's the same analysis, is it not, in asking what use the apartment building is put? I don't think it is. I know the civil rights case that it was on an interstate freeway, and there were specific – It was a motel near the interstate. But then the other one, Katzenbach, was the restaurant, the Ollie's Barbecue, where the sauce and the meat and so on traveled interstate commerce to the restaurant. I guess the distinction would be that those were not – those could be viewed as economics? I'll give you the economic versus crime, but we're talking about whether the apartment building constitutes an activity affecting interstate commerce. I lost my train of thought here. I'm sorry. I had a great answer for you. It's nice to know it doesn't just happen to us. And you've got two minutes and five seconds. I want to reserve some for rebuttal, but maybe I can think of that question when I'm preparing for the rebuttal. Thank you, Your Honor. Okay. Thank you. We'll hear from the government. May it please the Court. Michael Anderson on behalf of the United States. I was also trial counsel in this case. Rented apartments are per se used in interstate commerce, and the jury found in this case that the bomb-damaged apartment was a rented apartment. That is sufficient to sustain Garcia's conviction without reliance on the SUV or without consideration of the Commerce Clause implications of the SUV. So do you concede that the damage to the SUV was not sufficient to support the conviction? No, Your Honor. We merely are saying that the Court doesn't need to reach that issue because the apartment is an independent and sufficient basis, in particular given the special verdict form, which clearly indicated that the jury made a finding as to the apartment building. In this case with the apartment, we have the on-point case authority from Russell from the Supreme Court, which was reaffirmed when Jones used the same analysis and the same reasoning and cited to Russell in a case that came out one week after Morrison. That affirmance was recognized by this Court in Geiger, which came in 2000. If the Court has any questions, I'd be happy to answer them. Are you saying that the Government will take the position, at least is not abandoning the position, that blowing up a privately owned, personally used car could be within this statute and constitutional? It could be constitutional, Your Honor, and I believe at some point this Court may have to address that issue. But it doesn't need to address it in this case, in particular given the on-point case authority for the apartment and also given that we weren't able to fully develop the record that we wanted in the District Court. We'd like to reserve that for some future case. Well, you wouldn't, I mean, if we're talking academically, are you suggesting the rationale being that because the vehicle was, of course, assembled from things that moved in interstate commerce, that that would give appropriate jurisdiction over this crime? Your Honor, in this case, the evidence that was permitted to be introduced by the District Court was that the vehicle was manufactured outside of the State of California and then transported into the State of California. That was more limited than what the Government initially wanted to introduce with regard to the vehicle. So that's one of the reasons that we don't want to address that issue here in this decision, particularly given that it's unnecessary for the result that the Court needs to reach. I don't want to take your time on peripheral issues, but apparently you're giving us time. As much time as you need. Since we are grasping for the capillaries here, do you foresee a court that does reach the issue having to consider, well, tonight you were driving to the movies, which is down the block, and tomorrow you were going to Las Vegas, and there would be a different result in those two cases? Your Honor, I'm not authorized to take a position for the Department on this issue at this time, because we're concerned about being limited in a future case as to what we argue. I'm sorry, that's not a direct answer to your question. Well, it's a truthful answer, but it isn't an answer. What's your response to the challenge to the jury instructions? Your Honor, once this Court accepts that Russell is good law, as the District Court did, the jury instructions flow from that. The jury instructions are a proper statement of the laws contained in Russell. But not the instructions regarding the SUV? We're not conceding the SUV issue, Your Honor, but with regard to But the instructions cover both. They do, Your Honor. It breaks it down into both. The jury was given the option of both the SUV, the apartment, or both the SUV and apartment being found in Interstate Commerce. The jury filled out a special verdict form which indicated that they found both based on those jury instructions. So you're not addressing in this argument the instruction regarding the SUV? Your Honor, we'd prefer not to reach that issue. I don't know that we can go much further. So you're content if in this ultimate decision we say we assume without deciding that the SUV would not have been an adequate basis and then we look at the apartment? Your Honor, we'd ask that it be the other way, that the Court look at the apartment, find that the apartment is an adequate basis, and then rely on the case authority from this circuit which finds that the Court need not look to constitutional issues or resolve constitutional issues when there's an adequate basis elsewhere. The difficulty is you tried the case on that to us, and you're asking us to ignore an issue that's been brought to us on appeal. Not ignore it, Your Honor, but follow the case authority in this circuit which says to not address new constitutional issues unless it's necessary to do so. The reason that we don't want to present this is in our brief we responded and presented to the Court the theory that was permitted to us by the District Court. And we did present that theory, but we weren't able to with regard to the SUV. No, we weren't required, Your Honor, but we were given a more limited set of facts that we could work with than what I think would be most appropriate to ultimately address this issue. Your Honor, we were limited simply to the fact of the vehicle being manufactured out of state and then transferred into California. So the Court would not permit any testimony as to how the SUV was actually being used on a day-to-day basis? Correct, Your Honor. So to go back to Judge Garbus' question, let's suppose I live in Vancouver, Washington, but I work in Portland, Oregon, and I drive back and forth across the Columbia River every day to my job. Would that be a stronger case for application of the statute? Potentially it would be, Your Honor. I'm not authorized to take a position. Well, you indicted this guy for blowing up the SUV. We did, Your Honor, and I think we did that for a variety of reasons related to trial strategy. There is a scenario where we might have had to come before this Court and argue on the SUV if we had been unable to establish But the only thing the District Court allowed you to introduce was the fact that it was built in Wisconsin and somehow made its way to California. Correct. And that was it. That's right, Your Honor, because the District Court was looking to the decisions in Scarborough and other cases which talked about the origin of a product that moved in interstate commerce. I don't think we can do much more. Thank you, Your Honor. Thank you. Mr. Warner, I think you've got a couple minutes left. Just my train of thought has been refreshed. What I wanted to come up with, I believe on those cases, the civil rights cases, I believe that the record was replete with congressional findings. And I think under the Lopez and Morrison analysis, that is one of the factors that can be used as a basis. So I think that that makes them unique because of the historical issue and the economics and the congressional findings about that. Just a couple points. I'm not sure that congressional findings would have saved the guns in the school statute in Lopez based on the language of Justice Rehnquist's opinion. Right. In the Lopez case. About building inference upon inference. Right. That was an attempt to justify it by the effects of the crime, etc., etc. Exactly. No, but congressional findings are one of the factors that the court can look at and I think it makes it unique and separate really from this issue. One of the things mentioned was that Jones incited to Russell, again, however, the Jones case involved purely non-commercial use of the property. So Jones did not reach this issue of commercial use. And in fact, there were dissenting justices in Jones, Thomas and Scully, I believe. I think they were the ones that said that hey, we're not ready to decide whether commercial was reached by this. Commercial use is reached. In terms of the district court not allowing presentation of evidence, I'm just trying to think back to my review of the record and I believe that the I think the government is actually, they mentioned Scarborough, that the court was relying on Scarborough. It was the government that had cited Scarborough in support of its jury instruction. So it's a little odd to say that the court limited us because of its reliance on Scarborough when they're the ones that were citing Scarborough in essence. But the court apparently did limit the government from introducing anything other than the fact of the place of manufacture. I mean, isn't that all that the guy from the motor company testified to? That is all that he testified to. I don't recall the court saying I exclude, I'm excluding other evidence, but it was the instruction was settled based on the Scarborough sort of idea. And the jury did make findings as to both of those bases. So I think that the issue is properly before the court. But, I mean, do you disagree that our case law basically suggests that where the jury has made a special finding as to both and assuming that we agree that it is Russell that controls it, we need not reach the SUV issue at our disposition? I believe that there may be authority to avoid the Constitution. I know that there is always that. That is a rule in appellate courts is avoidance of constitutional issues. But I don't know if it can. I mean, there was a finding as to both conceivably who knows what's going to happen conceivably. We could be back here asking to decide that. I don't know. So maybe the court does have to decide it. Thank you both very much. The case is very well argued. And it is submitted on the briefs.
judges: Garbis, Tallman, Rawlinson